Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Frank D. Gardone and Audrey Gardone, his wife, Appellees.

274

Argued May 7, 1982, before Judges Blatt, Williams, Jr. and Craig, sitting as a panel of three.

*Jeffrey L. Giltenboth,* Special Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, *Harvey Bartle, III,* Acting Attorney General, for appellant.

*Joseph M. Ludwig, Ludwig & Achman,* for appellee.

Opinion by Judge Craig, July 1, 1982:

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), appeals the common pleas court's dismissal of its preliminary objections to a petition filed by Frank and Audrey Gardone (landowners) for the appointment of viewers under Section 612 of the Eminent Domain Code (Code),[1] to

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-612 reads:

Consequential damages

All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade

assess damages for drainage injury resulting from a change of grade in the relocation of Campbell's Run Road, Allegheny County.

The landowner testified, as did a witness for Penn-DOT, that the landowners' predecessors in title—the Staskos—received compensation after the former Department of Highways filed the declaration of taking at the commencement of the project. The landowners, who then owned a bar next door to the subject property, purchased the land from the Staskos about fourteen months later.

PennDOT first claims that the landowner is barred from recovering consequential damages because of the previous payment to the Staskos. The record, however, contains no direct evidence concerning the details of the settlement with the Staskos as to the property here involved.[2] Therefore, we are precluded from any determination as to the scope of the Stasko payment and its effect upon the landowners' present claim for damages.

PennDOT also challenges the common pleas court's conclusion that the landowners were entitled to compensation because PennDOT's work varied from the declaration of taking.

The common pleas judge found that PennDOT "changed the plans as originally contemplated thereby altering the grade of Campbell's Run Road along with

---

of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

[2] The record does contain a copy of a "Settlement Agreement (consequential Damages)" between PennDOT and the Gardones for the property next door to the parcel now at issue. The trial judge apparently was considering this document when he wrote "[m]oreover, the prior condemnation settlement should not deprive the Gardones of their right to additional compensation since the settlement did not contemplate further change of the right-of-way and the grade of Campbell's Run Road."

the adjacent right-of-way," and that "fill was placed on the right-of-way North of the Gardone property . . . with PennDOT's knowledge and consent . . . [which] benefited PennDOT by giving lateral support and uniform fill to the area adjacent to the roadway." The landowners contended that the large volume of fill was responsible for the excessive drainage, putting their house "in a hole."

PennDOT witnesses admitted that the fill was not contemplated in the original plans, but claim that a neighbor was responsible for placing it along Penn-DOT's right-of-way; they stated that permission was usually required to take such action, but that documentation of authorization could not be located.[3] In addition, PennDOT claims that the change in grade, as filed, would have resulted in a more severe alteration of the land.

We must agree with the lower court's reasoning that PennDOT's complicity in the alterations, coupled with the obvious effect of the grade change and fill operation on the landowners' enjoyment and use of their property, clearly warrant a conclusion that the landowners have sustained a compensable injury.

A careful review of the record convinces us that substantial evidence exists to support the court's dis-

---

[3] Mr. Rudolph Melini testified:

Q. It was your right of way?

A. Well, I don't know how he was able to come in and dump the dirt into our right-of-way. To this day I can't find a letter authorizing him to dump it. All right? I investigated that out in the field and I think Mr. Gardone can verify that.

. . . .

A. Actually, by rights, for him to dump the dirt and the dirt into the right-of-way—okay, he could have dumped the dirt—well, let me clarify it. Somewhere along the line he had to get some kind of approval to dump the dirt onto our shoulder edge. I couldn't find any letter.

missal of PennDOT's preliminary objections. *Pennsylvania Department of Transportation v. Pastuszek,* 55 Pa. Commonwealth Ct. 138, 422 A.2d 1223 (1980).

Accordingly, we affirm.

### ORDER

Now, July 1, 1982, the order of the Court of Common Pleas of Allegheny County dated April 18, 1980, No. G.D. 75-482, dismissing the preliminary objections of the Commonwealth of Pennsylvania, Department of Transportation, is affirmed.